Andrew K. Alper (State Bar No. 088876)
aalper@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Plaintiff
ASCENTIUM CAPITAL, LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

ASCENTIUM CAPITAL, LLC, a Delaware limited liability company,

Plaintiff,

v.

TG MANUFACTURING, LLC, a Michigan LLC,

Defendant.

Case No.

**COMPLAINT FOR BREACH OF EQUIPMENT FINANCE AGREEMENT**

Plaintiff alleges as follows:

**JURISDICTION**

1. At all times herein mentioned, Plaintiff, ASCENTIUM CAPITAL LLC ("Plaintiff"), was, and still is, a Delaware limited liability company with its principal place of business at 23970 US Highway 59 North, Kingwood, Texas and is qualified and authorized to conduct business in the State of California and conducts business at 11171 Sun Center Drive, Rancho Cordova, California 95670. Plaintiff is 100% owned by RF Acquisition, LLC a Delaware Limited Liability Company which is 100% owned by Regions Bank, an Alabama State Bank. Regions Bank is 100% owned by Regions Financial Corporation (NYSE: RF).

2. Plaintiff is informed and believes and therein alleges that at all times herein mentioned, Defendant TG MANUFACTURING, LLC ("Borrower") was, and still is, a Michigan

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

limited liability company with its principal place of business in Grand Rapids, Michigan.

3. Jurisdiction exists by virtue of the fact that Plaintiff and Borrower are citizens of different states and the amount due is in excess of $75,000.00 exclusive of interest and costs pursuant to 11 U.S.C. §1332(a)(1).

**VENUE**

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1) and (2) in that this District is a District where the Borrower agreed that litigation may be filed since the contract at issue has a forum selection clause in California and Plaintiff's place of business in California is in Sacramento, California. Borrower has expressly waived any right to assert that this is an inconvenient forum

5. The within action is not subject to the provisions of Section 2981, et. seq. (Rees-Levering Act) and Sections 1801, et. seq. (Unruh Act) of the Civil Code of the State of California,

**SPECIFIC ALLEGATIONS OF COMPLAINT**

6. On or about August 19, 2021, Borrower executed and delivered to Plaintiff an Equipment Financing Agreement No. 2619760 ("EFA"), pursuant to which Plaintiff loaned Borrower $335,000.00 to purchase a Bodor Fiber Laser Cutting Machine (the "Equipment"), pursuant to which Borrower agreed to make 72 monthly payments of $5,871.11, commencing on the "Commencement Date" (defined in the EFA as "the billing date specified by us in our sole discretion"). A true and correct copy of the EFA is attached hereto as Exhibit "1" and incorporated herein by this reference.

7. At the same time as Borrower executed and delivered to Plaintiff the EFA, Borrower executed and delivered to Plaintiff a Commencement Agreement for Agreement No. 2619760 (the "CA"). A true and correct copy of the CA is attached hereto as Exhibit "2" and is incorporated herein by this reference. As more fully set forth in the CA, the CA provides:

> "**The Equipment is being delivered at various times and the vendor or vendors of the Equipment have to be paid for each item of Equipment at or before delivery to you. You agree to commence the initial non-cancellable term of the [EFA] immediately even though items of Equipment remain to be delivered to and accepted by you from one or more vendors**."

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

8. The original pro forma invoice from Bodor that had been received by Borrower and Plaintiff dated August 5, 2021, for a unit that ultimately was sold to another customer of Bodor, which was located in China, required that 30% of the purchase price be paid as a down payment and that 70% was to be paid when the unit was ready to be shipped to Borrower. Although the EFA was not executed with that specific unit in mind, it was understood between Plaintiff and Borrower that the unit to be covered by the EFA would be subject to the same pricing, terms and conditions.

9. Plaintiff had emailed the EFA, CA and other related documents to Borrower for execution on or about August 12, 2021. For reasons solely due to issues with Borrower, the documents were not signed and delivered to Plaintiff until late morning August 19, 2021, by Chief Operating Officer Kevin Kyle ("Kyle"). There were still items that Plaintiff needed as a precondition to funding that were not received from Borrower until later that day and past the funding cutoff time, leading to a delay in funding until August 20, 2021, through no fault of Plaintiff. On August 19, 2021, at Borrower's request, Plaintiff notified Bodor that funding was expected on August 20, 2021.

10. On Friday, August 20, 2021, Plaintiff wired payment to Bodor, and notified Bodor by email of same. Instead of the 30% down payment for the Equipment, Plaintiff wired 50% of the price, $167,500.00.

11. On Monday August 23, 2021, Bodor requested confirmation of the payment, which Plaintiff provided. Bodor confirmed receipt of $167,500.00.

12. On or about August 24, 2021, Borrower informed Plaintiff that it had been informed that "we lost the laser." In an email exchange later that evening, Bodor stated that it had attempted on several occasions to contact Borrower to "push you to perform the payment and tell you other customer are transferring the money. However, we failed to reach you." The Bodor representative further explained that Borrower's payment was "later than our other customer." The Bodor representative further stated that it had nearly finished construction of another unit. Borrower's representative Kyle responded that when Plaintiff sent the wire out last week, nothing of the sort had been stated and that "[w]e need to understand how Bodor is going to remedy this

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

situation. As of now you have 167K and no laser for us."

13. In accordance with the terms of the EFA and CA, Borrower initiated an ACH for payment of $770.00 in processing fees and costs on August 24, 2021, which this ACH payment was returned by Plaintiff's bank as: "CORPORATE CUSTOMER ADVISES NOT AUTHORIZED".

14. On August 25, 2021 a representative of Plaintiff contacted Borrower about the ACH return payment, and Borrower authorized Plaintiff's representative to re-run the ACH payment a second time.

15. On August 27, 2021, the second ACH payment of $770.00 was returned by Plaintiff's bank again as: CORPORATE CUSTOMER ADVISES NOT AUTHORIZED".

16. On September 8, 2021, Plaintiff's representative spoke to Borrower again about the returned ACH payment, and this time Borrower provided Plaintiff with updated bank account information from which to draft future payments, and on September 10, 2021, an ACH payment was drafted from the new bank account in the amount of $3,705.56, for the $770.00 which was now past due plus new charges for the pro-rated payment that came due on September 5th in the amount of $2,935.56.

17. On September 24, 2021, Plaintiff assessed Borrower a late charge in the amount of $77.00 (10% of the $770.00), and this late charge was received via ACH payment from Borrower's bank.

18. On October 5, 2021, pursuant to the EFA and the CA, Plaintiff initiated an ACH draft for the scheduled monthly payment due in the amount of $5,871.11, however, on the same day the Borrower's bank returned that ACH payment as: "CORPORATE CUSTOMER ADVISES NOT AUTHORIZED".

19. Thereafter, Borrower failed and refused to make any further payments in accordance with the terms of the EFA and CA.

20. On October 21, 2021, Bodor notified Borrower and Plaintiff that a laser machine was at that time ready for shipment and that Bodor required 100% payment before the machine left the factory.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

21. Plaintiff notified Borrower that it was agreeable in principle to funding the balance of the purchase price if, but only if, Borrower brought the account current and so notified Bodor. Thereafter, Borrower failed and refused to pay the amounts then due under the EFA and CA. Borrower failed and refused to ever make any payment to Plaintiff despite the execution of the EFA and CA.

22. Despite constant communication between Plaintiff and Borrower with almost all of it being with Kyle during October, November, and December 2021, and demand for payment by Plaintiff, Borrower refused to make the payments due under the EFA and CA. Accordingly, under the terms of the EFA and CA, on or about December 31, 2021, Plaintiff sent to Borrower a Notice to Terminate Additional Funding and Demand for Payment (the "12/30/21 Notice"), a true and correct copy of which is attached hereto as Exhibit "3" and is incorporated herein by this reference. Pursuant to the 12/31/21 Notice, Plaintiff (a) exercised its rights under the EFA and CA to cease funding to Bodor, and (b) re-calculated the amount owed under the EFA based solely on the $167,500.00 disbursement actually made to Bodor. As rewritten, the monthly payments now due were stated to be 72 payments of $2,935.56, beginning October 5, 2021, with a past due balance of $8,806.68. Demand was made for payment of that amount no later than 10 days from the date of the 12/31/21 Notice.

23. Borrower failed and refused to make the payment demanded in the 12/31/21 Notice or any other payment. Accordingly, Plaintiff exercised its rights under the EFA to accelerate and declare the entire balance of the EFA immediately due and payable and on January 10, 2022, sent to Borrower a Notice of Default and Acceleration (the "1/11/22 Demand"), a true and correct copy of which is attached hereto as Exhibit "4", and is incorporated herein by this reference. In accordance with the 1/11/22 Demand, there is now due, owing and payable by Borrower to Plaintiff the total sum of $211,360.32 but Plaintiff is obligated to discount unearned interest to present value at 3% which sum be conformed to proof at time of trial.

24. Despite demand for payment, Borrower has failed and refused to pay any portion of the amount due.

25. Under the terms of the EPA, Plaintiff is entitled to recover its reasonable attorneys'

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

fees in costs in enforcing the terms thereof. Plaintiff has been required to retain counsel to enforce the EFA and CA and has incurred and continues to incur legal fees and costs.

26. Accordingly, Plaintiff is entitled to judgment against Borrower as follows:

a. $196,951.08 as calculated in the 1/11/22 Demand, Exhibit 4;

b. interest from and after January 11, 2022, in the amount of $96.03 per day until paid in full or date of entry of judgment;

c. all other fees and charges to which Plaintiff is entitled under the EFA, according to proof;

d. attorneys' fees and costs, according to proof.

WHEREFORE, Plaintiff prays for judgment against Borrower as follows:

1. The principal sum of $211,360.32 with the unearned interest discounted to present value at 3% in an amount according to proof. At the time of the 1/11/22 Demand that sum was $196,951.08 but Plaintiff will conform this amount to proof at time of trial;

2. All other fees and charges to which Plaintiff is entitled under the EFA, according to proof;

3. Reasonable attorneys' fees and costs in an according to proof;

4. For such other relief as to the Court seems just and proper.

DATED: January 31, 2022

FRANDZEL ROBINS BLOOM & CSATO, L.C.

By: ______________________________
ANDREW K. ALPER
Attorneys for Plaintiff
ASCENTIUM CAPITAL, LLC

# EXHIBIT 1



# EQUIPMENT FINANCE AGREEMENT No. 2619760

Ascentium Capital LLC
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

| DEBTOR: | ADDRESS | TERM: |
|---|---|---|
| TG MANUFACTURING, LLC | 4720 44TH ST SE GRAND RAPIDS MI 49512 | 72 |

**PAYMENT SCHEDULE:** 72 @ $5,871.11

**COLLATERAL:** Items of personal property as generally described herein which Ascentium Capital LLC ("Secured Party") and Debtor agree that a more detailed description of the property being financed shall be maintained by us among our books and records in whatever more detailed description of the property financed is received from the supplier of such property (the "Supplier") and, absent manifest error, such detailed description shall be considered incorporated into this Equipment Finance Agreement and shall be provided to Debtor promptly upon request.
**Personal Property Description:** FIBER LASER

**1. Definitions:** The words "you" and "your" refer to the DEBTOR, its successors and permitted assigns, as shown above. The words "we", "us" and "our" refer to the SECURED PARTY, its successors and assigns.

**2. Acceptance; Representations & Warranties:** We agree to lend to you, and you agree to borrow from us, an amount for the financing of the Collateral. This Equipment Finance Agreement (this "EFA" or this "Agreement") has an interim term ("Interim Term") and an initial term ("Initial Term"). The foregoing, collectively, the "Term". The Interim Term starts on the date of the funding of the loan evidenced by this EFA. The Initial Term starts on the billing date specified by us in our sole discretion (the "Commencement Date"). You represent and warrant to us that all information conveyed to us in connection with this EFA and all related documents whether by you, a guarantor, the Supplier or any other person, is true, accurate, complete and not misleading.

**3. Security Interest:** You hereby grant to us a security interest under the Uniform Commercial Code ("UCC") in the Collateral and all accessories and additions thereto and replacements thereof and all proceeds and products of the foregoing. Such security interest is granted to secure payment and performance by you of your obligations hereunder. All amounts received from you under this EFA shall be applied towards your obligations to us as we determine.

**4. Payments:** You promise to pay us the number of payments shown above, each in the amount shown above, commencing on the Commencement Date and continuing on the same day of each month thereafter during the Initial Term (each a "Payment", and each day a Payment is due hereunder a "Payment Date"), without need of an invoice, together with all other amounts due from time to time by you hereunder. The total initial payment shall be paid upon your execution of this EFA. If the contemplated transaction is not consummated, the total initial payment may be retained by us as partial compensation for costs and expenses incurred by us in preparation for the transaction. The amount of each Payment is based upon the total estimated cost of the Collateral, or the portion thereof being purchased with the proceeds of the loan evidenced hereby, you have provided to us and which is set forth above. If the final cost of the Collateral (or the portion being purchased) we pay the Supplier is higher or lower than that estimate, we will adjust the amount of each Payment proportionately higher or lower than the Payment amount specified above. You also agree to pay, when invoiced, an amount equal to 1/30th of the Payment amount for each day from and including the date we fund the loan evidenced by this EFA, to but excluding the first Payment Date. Following the first Payment Date, the Term shall continue without interruption for the number of months indicated above. YOUR OBLIGATION TO MAKE PAYMENTS AND PAY OTHER AMOUNTS DUE HEREUNDER IS ABSOLUTE AND UNCONDITIONAL AND NOT SUBJECT TO ABATEMENT, REDUCTION OR SET-OFF FOR ANY REASON WHATSOEVER. THIS IS A NON-CANCELABLE AGREEMENT. THIS EFA, THE TERMS OF WHICH HAVE BEEN FREELY NEGOTIATED BY EACH PARTY, IS ALSO SUBJECT TO THE TERMS AND CONDITIONS ON THE FOLLOWING PAGE WHICH IS MADE PART HEREOF AND WHICH DEBTOR AND SECURED PARTY ACKNOWLEDGE THEY HAVE READ AND ACCEPTED.

**5. DISCLAIMER OF WARRANTIES AND CLAIMS; LIMITATION OF REMEDIES:** THERE ARE NO WARRANTIES BY OR ON BEHALF OF SECURED PARTY AND NEITHER THE SUPPLIER NOR ANY OTHER PARTY IS SECURED PARTY'S AGENT. DEBTOR ACKNOWLEDGES AND AGREES: (A) DEBTOR SELECTED THE SUPPLIER AND COLLATERAL, (B) SECURED PARTY MAKES NO WARRANTIES WHETHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE COLLATERAL, ITS MERCHANTABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE; (C) DEBTOR ACCEPTS THE COLLATERAL "AS IS" AND WITH ALL FAULTS; (D) DEBTOR AGREES THAT THE COLLATERAL WILL BE USED SOLELY FOR COMMERCIAL OR BUSINESS PURPOSES; (E) IF THE COLLATERAL IS UNSATISFACTORY FOR ANY REASON DEBTOR'S ONLY REMEDY, IF ANY, SHALL BE AGAINST THE SUPPLIER OR MANUFACTURER OF THE COLLATERAL AND NOT AGAINST SECURED PARTY; (F) DEBTOR SHALL HAVE NO REMEDY FOR CONSEQUENTIAL, INCIDENTAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES AGAINST SECURED PARTY, ALL OF THE SAME BEING DISCLAIMED AND WAIVED; AND (G) NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL SHALL RELIEVE DEBTOR OF THE OBLIGATION TO MAKE PAYMENTS OR RELIEVE DEBTOR OF ANY OTHER OBLIGATION UNDER THIS EFA.

**6. Location; Maintenance; Installation; Insurance:** You agree to maintain records showing the location of each item of Collateral. You shall report each location to us upon our request and shall not change the location of the Collateral without our advance written consent. You are responsible for installing and keeping the Collateral in good working order. You shall not make any alterations, additions or improvements to the Collateral which detracts from its economic value or functional utility. If the Collateral is damaged or lost, you agree to continue making scheduled Payments unless we have received the Casualty Value pursuant to Section 11. You agree to keep the Collateral insured against loss during the Term and to have us named as loss payee in such coverage amounts as we may specify from time to time, from an insurer who is acceptable to us. You agree to provide us with a certificate of insurance acceptable to us upon our request. If you do not provide such certificate then we will have the right, but not the obligation, to have such insurance placed for the Term in such form and amount as we deem reasonable to protect our interests. You understand and agree that (i) such insurance will name us, and not you, as the insured (therefore, such insurance will be for our sole benefit and not for your benefit) and (ii) your monthly payment pursuant to this EFA shall include a charge equal to (A) our premium expense for such insurance, which may higher than the premium you would pay if you placed such insurance independently, plus (B) an annualized finance charge not to exceed 15% on our premium expense, plus (C) fees for billing and other administrative services with respect to such insurance in an amount not to exceed $7.00 per month.

**7. Taxes and Fees; Indemnification:** You agree to pay when due and to indemnify and hold us harmless from all taxes, fees, fines, interest and penalties, including, without limitation, personal property or documentary stamp taxes, ("Taxes") relating to the use or ownership of the Collateral or to this EFA now or hereafter imposed, levied or assessed by any taxing authority. We may in our sole discretion, elect to pay any such Taxes directly to a taxing authority and if so you agree to reimburse us on our demand for any such Taxes paid on your behalf together with any filing or processing fee charged by us. If any taxing authority requires any Taxes to be paid in advance, and we pay such Taxes, we may increase the cost of the Collateral we are financing by such amount as described in Section 4 above thereby increasing the amount of each Payment to reflect the payment of such Taxes. You also agree to pay us and reimburse us for all costs and expenses in documenting and servicing this EFA. You agree to indemnify and hold us harmless from any suits, claims, losses or damages we suffer in any way relating to the use or ownership of the Collateral. Your obligations under this Section 7 shall survive the expiration or earlier termination of this EFA. You agree to pay us fees in an amount in effect from time to time in connection with the documentation of this EFA and any site inspection or lien search we deem necessary. You agree that all such fees, including fees and finance charges in connection with any insurance we obtain for our benefit pursuant to Section 6, may not only cover our costs they may also include a profit.

**8. Personal Property:** The Collateral will be and shall remain personal property and, if requested by us, you will obtain real property waivers satisfactory to us. You shall keep the Collateral free from any and all liens and encumbrances other than those in our favor. You shall give us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Collateral. You hereby irrevocably authorize us and appoint us as your attorney-in-fact with the power to execute and to file this EFA and any financing statement(s) or security agreement(s) with respect to the Collateral. If your signature on any financing statement or similar document is required by law, you shall execute such supplemental instruments and financing statements we deem to be necessary and advisable and shall otherwise cooperate to defend and perfect our interest in the Collateral by filing or otherwise. You also agree to pay us on demand filing and registration fees prescribed by the UCC or other law. Any Collateral that is subject to title or registration laws shall be titled and registered as directed by us.

**9. Default; Remedies; Late Charges:** If any one of the following events occur with respect to you or any Guarantor, you will be in default: (i) you fail to pay any Payment or other amount due under this EFA, when due, (ii) you breach or fail to perform any of your other covenants and promises under this EFA, (iii) you become insolvent, any action under the United States Bankruptcy Code is filed by or against you, make an assignment for the benefit of creditors, admit your inability to pay your debts as they become due, (iv) you merge, consolidate with, or sell all or substantially all of your assets or a majority of your ownership interests to any third party without our prior written consent or (v) if you terminate your entity existence or take any actions regarding the cessation or winding up of your business affairs. If you are in default, at our election, we can accelerate and require that you pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance". The Accelerated Balance will be equal to the total of: (i) accrued and unpaid amounts then due under this EFA, and (ii) the remaining Payments discounted to their then present value at 3% per annum. We can also pursue any of the remedies available to us under the UCC or any other law. In the event we seek to take possession of any part of the Collateral, you irrevocably waive to the fullest extent permitted by law any bonds, surety or security required by statute, court rule or otherwise as an incident of such possession. You agree to pay our reasonable attorneys' fees and actual costs incurred by us in enforcing our rights hereunder including repossession, storage, refurbishment and sale of the Collateral and collection costs, and all non-sufficient funds charges and similar charges. If any part of a payment is late, you agree to pay us upon our demand the following, or if less, the maximum amount allowed under applicable law: (x) a late charge equal to the greater of 10% of the payment or $25.00, (y) a charge of $30.00 for each check returned for any reason or if any ACH debit charge is not honored and (z) if we have had to perform collection activities in connection with such late payment, our specified collection charges then in effect. The foregoing will not be construed as interest but as reimbursement to us to cover administrative and overhead expenses related to the processing and collection of the late payment.

10. **Assignment; Inspection:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN, LEASE OR ENCUMBER THE COLLATERAL OR THIS EFA. We may sell, transfer, assign or encumber this EFA, in whole or in part, without notice to you or your consent. You agree that if we sell, transfer, assign or encumber this EFA, the assignee will have the rights and benefits that we assign to the assignee and will not have to perform any of our obligations. You agree that the rights of the assignee will not be subject to any claims, defenses or set-offs that you may have against us. We and our agents and representatives shall have the right at any time during regular business hours to inspect the Collateral and for that purpose to have access to the location of the Collateral.

11. **Risk of Loss:** You assume and shall bear the entire risk of loss, theft, damage and destruction of the Collateral from any cause whatsoever, and no loss, theft, damage or destruction of the Collateral shall relieve you of the obligation to make Payments or any other obligation under this EFA. You shall promptly notify us in writing of such loss, theft, damage or destruction. If damage of any kind occurs to any item of Collateral, you, at our option, shall at your expense (a) place the Collateral in good repair, condition or working order, or (b) if the Collateral cannot be repaired or is lost, stolen or suffers a constructive loss under an insurance policy covering the Collateral, pay to us the "Casualty Value." The Casualty Value will be equal to the total of (i) accrued and unpaid amounts then due and owing, and (ii) the remaining Payments discounted to present value at 3%, in both cases as of the date the Casualty Value is received by us.

12. **Choice of Law; Waiver of Jury Trial:** Subject to the following sentence, this EFA shall be governed by, construed, interpreted and enforced in accordance with the laws of the state of California. If any amount contracted for, charged or received in connection with this EFA constitutes interest or regulated time-price differential governed by, not exempt from, and in excess of amounts lawfully permitted, under California law (the "Subject Amount"), then (i) if the law of state in which Debtor resides or is headquartered (as indicated in Debtor's address above; the "Debtor's State") would permit the lawful contracting for, charging or receipt of any part of the Subject Amount, then the parties agree that the law of Debtor's State shall govern as to the contracting for, charging and receipt of such interest or regulated time-price differential and (ii) if clause (i) preceding is not applicable, Secured Party shall make any necessary adjustments so as to eliminate such excess. Debtor agrees to provide Secured Party advance written notice and an opportunity to cure pursuant to the preceding sentence any contract, charge or receipt claimed by Debtor to be unlawful; and Secured Party may calculate maximum lawful amounts by amortizing, prorating, allocating reallocating, discounting, treating months as equal intervals, and spreading in each case to the fullest extent permitted by applicable law. You consent to the non-exclusive jurisdiction of the federal and state courts located in the state of California in any action or proceeding relating to this EFA, YOU WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH ACTION OR PROCEEDING, AND YOU WAIVE ANY RIGHT TO ASSERT THIS IS AN INCONVENIENT FORUM.

13. **Miscellaneous:** During the Term, you agree to provide us with all financial statements and copies of tax returns we may request. If we supply you with labels, you shall label any and all Collateral and shall keep the same affixed in a prominent place. If any provision hereof or any remedy herein provided is found to be invalid under any applicable law, the remaining provisions hereof, shall be given effect in accordance with the manifest intent hereof. The parties agree that each Payment includes interest. You agree that a waiver of breach will not be a waiver of any other subsequent breach, and that any delay or failure to enforce our rights under this EFA does not prevent us from enforcing any rights at a later time. YOU AGREE THAT WE WILL NOT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES FOR ANY DEFAULT BY US UNDER THIS EFA. Section headings are for convenience and are not a part of this EFA. You agree that by providing us with an email address or telephone number for a cellular or other wireless device, you expressly consent to receiving notices and other communications including email, voice and text messages from us or our affiliates or assigns at that email address or telephone number, and this express consent applies to each such email address or telephone number that you provide to us now or in the future and permits such communications regardless of their purpose. These calls and messages may incur access fees from your internet or wireless provider. You agree that the original of this EFA may be electronically duplicated and a copy hereof may be introduced in lieu of the original thereof and without further foundation. The parties hereto expressly waive the secondary evidence rule. You agree that this EFA will be binding upon your successors, permitted assigns, heirs and legal representatives. You authorize us to complete any blank in this instrument or in any document executed or delivered in connection herewith that contemplates a date by inserting a date deemed appropriate by us. Time is of the essence with respect to your obligations hereunder. No term or provision of this EFA may be amended, altered, waived or discharged except by a written instrument signed by the party against whom enforcement is sought. You agree, however, that we are authorized, without notice to you, to supply missing information or correct any misspellings or obvious errors in this EFA. Any formal notice given pursuant to this EFA shall, if delivered by mail, be deemed given 2 business days after being placed with the U.S. Postal Service, postage prepaid, addressed to the Debtor at its address set forth above, or to Secured Party at 23970 Hwy 59 N, Kingwood, TX 77339-1535, or such other address as a party may designate by written notice to the other. If Debtor constitutes more than one person, you agree that the liability of each such person hereunder is joint and several. Any restrictive endorsement on any check you give us in payment of any amount due hereunder shall be void. You may not prepay this EFA without our prior written consent. A facsimile or other copy of this EFA, as executed, shall be deemed the equivalent of the originally executed copy for all purposes. Secured Party may acknowledge acceptance of this EFA in a subsequent communication signed by Secured Party. All amounts payable hereunder by you if not paid when due shall accrue interest at a rate of interest of 1.5% per month or the highest rate allowed by applicable law if less, from the due date thereof until received by us in cash and shall be payable on demand. This EFA may be executed in separate counterparts which together shall constitute one and the same instrument. You agree this EFA may be signed electronically pursuant to the Electronic Signatures in Global and National Commerce Act and other applicable law. Only the copy of this EFA marked as the "sole original" or similar language by Secured Party or its designee is the chattel paper original of this EFA.

**This EFA shall become effective upon Debtor's signature below, provided, however, that our obligation to perform our obligations under this EFA shall be subject to our satisfactory receipt of all conditions specified by us, including a complete and properly executed documentation package, as determined by us. By signing below Debtor hereby irrevocably accepts the Collateral under the EFA and irrevocably authorizes Lender to pay the Supplier on behalf of Debtor. The person executing this EFA is authorized to do so, making this EFA the valid and binding act of the Debtor.**

| **Debtor Name:** | TG MANUFACTURING, LLC | **By:** Kevin Kyle | [signature] |
|---|---|---|---|
| | | **Printed Name/Title:** | KEVIN KYLE, CHIEF OPERATING OFFICER |

**AUTHORIZATION FOR ACH PAYMENTS:** Debtor authorizes Secured Party or Secured Party's successors and assigns to automatically initiate and make debit entry charges to Debtor's bank account indicated below for the payment of all amounts owed by you from time to time under the EFA. This Authorization is to remain in effect during the Term of the and Debtor acknowledges that a revocation of this authority shall be an event of default under the Agreement. Any incorrect charge will be corrected upon notification to us, by either a credit or debit to Debtor's account.

| **Bank Name:** | Bank of America Merrill Lynch | **Business Acct Name:** | TG-Manfacturing, LLC |
|---|---|---|---|
| **Account No:** | 375011525555 | **ABA/Routing No.:** | 072000805 |
| **Authorized Signature:** | [signature] | **Printed Name and Title:** | Kevin Kyle, President/COO |

# EXHIBIT 2

ascentium CAPITAL

## COMMENCEMENT AGREEMENT

Ascentium Capital LLC
23970 HWY 59 N
Kingwood, TX 77339-1535
AscentiumCapital.com

**Agreement No. 2619760**

Date: August 12, 2021

You, the Customer, and Ascentium Capital LLC ("we", "us", "our") have entered into the above referenced equipment lease, equipment finance agreement, secured loan or similar agreement (which may be one or more schedules to a master agreement) ("Agreement") pursuant to which we will be financing the Equipment or Collateral as defined in and described in the Agreement (in either case "Equipment") as set forth in this Commencement Agreement ("CA"). The Equipment is being delivered at various times and the vendor or vendors of the Equipment have to be paid for each item of Equipment at or before its delivery to you. You agree to commence the initial non-cancelable term of the Agreement immediately even though items of Equipment remain to be delivered to and accepted by you from one or more vendors.

**NOW THEREFORE, it is agreed as follows:**

1. The term of the Agreement will commence on the date of this CA, with the interim term commencing on the date set forth above and the initial term commencing as provided in the Agreement. You acknowledge and agree that notwithstanding the fact that not all items of Equipment have been delivered to and accepted by you as of the date set forth above, the terms and conditions of the Agreement, including your obligation to pay all amounts of rent or debt service set forth in the Agreement, shall commence immediately and, except as otherwise specifically set forth in this CA, irrevocably.

2. You agree to inspect and accept for purposes of the Agreement all undelivered items of Equipment immediately upon their delivery to you. If, when delivered, an item of Equipment is damaged or non-conforming, you agree to cause the vendor in question to repair and/or replace any such item of Equipment and you agree to immediately accept any conforming replacement and/or repaired Equipment for all purposes under the Agreement while continuing to meet all of your payment and other obligations under the Agreement.

3. All amounts anticipated to be disbursed by us on your behalf that have not been disbursed as of the date of this CA will be deemed disbursed by us into a separate holding account for your benefit ("Account"), the contents of which shall be debited by the amount of each subsequent disbursement to vendor(s) as contemplated by this CA. To secure your obligations to us under the Agreement and this CA, you hereby grant to us a security interest in the contents of the Account and any proceeds.

4. The Agreement contemplates a pro-rata adjustment to the payments owed by you under the Agreement in the event the purchase price of the Equipment and other amounts, if any, paid by us on your behalf are higher or lower than those on which the payments set forth in the Agreement are based. Following the delivery and acceptance of all items of Equipment set forth in the Agreement, we shall make any necessary adjustments to the payments as contemplated by the Agreement. You agree that we will have no liability to you in the event we determine to terminate the funding of any vendor because we have determined, in our sole discretion, that there has been a material adverse change in your creditworthiness from that on which we based our approval of the Agreement. In any circumstance contemplated by the preceding sentence, we will continue the Agreement with the Equipment accepted by you and funded by us as of the date we determine to terminate funding the Agreement and we will reduce the amount of each payment of rent or debt service you owe under the Agreement proportionally, taking into account the higher payments made by you up to the date of that determination and any balance in the Account shall revert to us.

5. This CA sets forth the entire agreement of the parties with respect to its subject matter and it may only be amended by a written instrument executed by the party against whom enforcement is sought. In the event of a conflict between this CA and the terms of the Agreement, the terms of this CA shall govern and control, provided however, except as explicitly set forth in Section 4 above, nothing set forth in this CA shall be deemed to affect your obligation to pay and perform all of your obligations as set forth in the Agreement without setoff, abatement or counterclaim. This CA shall terminate and be of no further force and effect following your acceptance and our funding of the last item of Equipment being financed under the Agreement. This CA will be governed by and construed in accordance with the laws of the jurisdiction governing the Agreement.

You agree that a facsimile or other copy of this CA, as executed, shall be deemed the equivalent of the originally executed copy for all purposes.

| **Customer Name:** | TG MANUFACTURING, LLC | **By:** Kevin Kyle | [signature] |
|---|---|---|---|
| | | **Printed Name/Title:** | KEVIN KYLE, CHIEF OPERATING OFFICER |

# EXHIBIT 3



Ascentium Capital LLC
23970 HWY 59N
Kingwood TX 77339-1535

Jerry L. Noon, Vice President
*jerrynoon@ascentiumcapital.com*
T: (281) 348-2013
F: (866) 846-3679

December 31, 2021

**VIA UPS AND EMAIL**

TG Manufacturing, LLC
4720 44th St SE
Grand Rapids, Michigan 49512
Email: kevin.kyle@tg-manufacturing.com
Email: susan.smith@tg-manufacturing.com
Email: rich.achtenberg@tg-manufacturing.com

RE: Ascentium Capital LLC Equipment Finance Agreement No. 2619760 (the "EFA") with TG Manufacturing, LLC ("Debtor")

# NOTICE TO TERMINATE ADDITIONAL FUNDING AND DEMAND FOR PAYMENT

Ladies and Gentlemen:

On or about August 20, 2021, Debtor entered into the EFA, Commencement Agreement and related documents with Ascentium Capital LLC ("Ascentium") in order to finance Debtor's purchase of equipment from Bodorlaser Inc. ("Bodorlaser").

The EFA is past due because Debtor has failed and refused to pay the monthly payments due from October 5, 2021, therefore, the EFA is in Default (as defined in the EFA).

Because of Debtor's default and because the entire cost of the equipment being acquired from Bodorlaser has not been paid to Bodorlaser, Ascentium has exercised its rights pursuant to the EFA and Commencement Agreement, and has ceased any additional funding to Bodorlaser on your behalf. Ascentium has re-calculated the amount you owe under the EFA based solely on the $167,500.00 disbursement actually made to Bodorlaser to-date. You have been given credit for the payments Ascentium actually received, if any, from you to-date.

Accordingly, the monthly Payments have been rewritten to the new amount due based on the original dates schedule to be due, and they are detailed below:

- Beginning October 5th, 2021, seventy-two (72) Payments each in the amount of $2,935.56.

Accordingly, **DEMAND IS MADE for payment of the past due balance of $8,806.68**, the total of which must be received at Ascentium's office at 23970 Highway 59 N., Kingwood, Texas, 77339, no later than ten (10) days from the date of this letter.

If any payment less than the amount demanded above is delivered to Ascentium, such payment will be applied to Debtor's obligations under the EFA (in any sequence Ascentium selects in its sole discretion), with full reservation of all of Ascentium's rights and remedies and without waiver of or prejudice to any of Ascentium's rights or remedies. Moreover, any such partial payment shall not cure any default under the EFA. Therefore, unless the demand stated above is timely and fully satisfied, or this matter is otherwise resolved with written documentation acceptable to Ascentium in its sole discretion, Ascentium will immediately take all further steps it deems appropriate, including and without limitation, (i) acceleration of the entire EFA balance, or (ii) commencing a legal action against some or all of you for all available relief.

Please note that Ascentium has no obligation or duty to inform Debtor of Ascentium's intention to exercise its rights and remedies except as expressly required by the EFA or applicable law. Ascentium is, however, doing so in this letter as a courtesy.

To the extent your obligations have been discharged, dismissed, or are subject to an automatic stay under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect any such obligation. This notice is given pursuant to 11 U.S.C. § 362(b) (11), if applicable.

This letter is not an all-inclusive statement of Ascentium's rights or remedies against any person or entity. Moreover, nothing stated in or omitted from this letter is a waiver of, or has any adverse effect on, any of Ascentium's rights or remedies, and all such rights and remedies are cumulative, may be exercised in any such order as Ascentium elects, and are expressly reserved.

THIS IS AN ATTEMPT TO COLLECT THE INDEBTEDNESS EVIDENCED BY THE EFA, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. PLEASE BE GOVERNED ACCORDINGLY.

Sincerely,
Ascentium Capital LLC

Jerry L. Noon, Vice President Asset Management

# EXHIBIT 4




Ascentium Capital LLC
23970 HWY 59N
Kingwood TX 77339-1535

Jerry L. Noon, Vice President
*jerrynoon@ascentiumcapital.com*
T: (281) 348-2013
F: (866) 846-3679

---

January 11, 2022

**VIA UPS AND EMAIL**

TG Manufacturing, LLC
4720 44th St SE
Grand Rapids, Michigan 49512
Email: kevin.kyle@tg-manufacturing.com
Email: susan.smith@tg-manufacturing.com
Email: rich.achtenberg@tg-manufacturing.com

RE: Ascentium Capital LLC Equipment Finance Agreement No. 2619760 (the "EFA") with TG Manufacturing, LLC ("Debtor")

# NOTICE OF DEFAULT AND ACCELERATION

Ladies and Gentlemen:

On or about August 20, 2021, Debtor entered into the EFA with Ascentium Capital LLC ("Ascentium") in order to finance Debtor's purchase of equipment from Bodorlaser Inc. (the "Collateral").

The EFA is past due because Debtor has failed and refused to pay the monthly payment due from October 5, 2021, therefore, the EFA is in Default (as defined in the EFA). In accordance with its rights and remedies under the EFA Ascentium hereby accelerates and declares the entire balance of the EFA immediately due and payable. Pursuant to the default and remedies section of the EFA, Ascentium is required to discount future payments. The accelerated amount is detailed on the following page:

| EFA 2619760 | ($) |
|---|---|
| Past Due Payments: | 11,742.24 |
| Late Charges: | 930.19 |
| Insurance Charges: | 990.30 |
| Default Interest on Past Due Amounts (1.5% per month): | 302.38 |
| Future Payments Accelerated (3% present value discount applied): | 182,985.97 |
| TOTAL: | 196,951.08 |

Accordingly, **DEMAND IS MADE for payment of $196,951.08 plus accruing default interest of $96.03 per day** and all other contractually-applicable charges, the total of which must be received at Ascentium's office at 23970 Highway 59 N., Kingwood, Texas, 77339, no later than ten (10) days from the date of this letter.

Pursuant to its rights under the EFA and applicable law, Ascentium is entitled to take possession of the Collateral. The Debtor is holding the Collateral in violation of Ascentium's rights. Accordingly, **DEMAND IS MADE for Debtor to do the following**:

1. Cease taking any action to sell, use, assign or dispose of the Collateral;

2. Immediately deliver to Ascentium any proceeds of the Collateral;

3. Assemble and surrender the Collateral to Ascentium at a time and place acceptable to Ascentium; and

4. Stop using, transferring, withdrawing or encumbering any funds on deposit in any financial institution at which proceeds of the Collateral have been deposited and immediately pay all such funds to Ascentium.

Please contact the undersigned to make arrangements for the surrender of the Collateral (in which event the Debtor shall remain liable for the debt and any deficiency balance).

If any payment less than the full indebtedness demanded above is delivered to Ascentium, such payment will be applied to said indebtedness (in any sequence Ascentium selects in its sole discretion), with full reservation of all of Ascentium's rights and remedies and without waiver of or prejudice to any of Ascentium's rights or remedies. Moreover, any such partial payment shall not cure any default under the EFA, and such payment shall not reinstate or de-accelerate any indebtedness under the EFA. Therefore, unless the demand stated above is timely and fully satisfied, or this matter is otherwise resolved with written documentation acceptable to Ascentium in its sole discretion, Ascentium will immediately take all further steps it deems appropriate, including and without limitation commencing a legal action against some or all of you for all available relief.

Please note that Ascentium has no obligation or duty to inform Debtor of Ascentium's intention to exercise its rights and remedies except as expressly required by the EFA or applicable law. Ascentium is, however, doing so in this letter as a courtesy.

To the extent your obligations have been discharged, dismissed, or are subject to an automatic stay under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect any such obligation. This notice is given pursuant to 11 U.S.C. § 362(b) (11), if applicable.

This letter is not an all-inclusive statement of Ascentium's rights or remedies against any person or entity. Moreover, nothing stated in or omitted from this letter is a waiver of, or has any adverse effect on, any of Ascentium's rights or remedies, and all such rights and remedies are cumulative, may be exercised in any such order as Ascentium elects, and are expressly reserved.

THIS IS AN ATTEMPT TO COLLECT THE INDEBTEDNESS EVIDENCED BY THE EFA, AND/OR SECURED BY THE LIENS, SECURITY INTERESTS, AND TERMS AND PROVISIONS CONTAINED IN THE EFA, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. PLEASE BE GOVERNED ACCORDINGLY.

Sincerely,
Ascentium Capital LLC

Jerry L. Noon
Vice President, Asset Management

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**VERIFICATION**

**STATE OF TEXAS, COUNTY OF HARRIS**

I have read the foregoing **COMPLAINT FOR: BREACH OF EQUIPMENT FINANCE AGREEMENTS;** and know its contents.

☐ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒ I am Vice President - Asset Management of Ascentium Capital LLC, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☒ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for Ascentium Capital LLC, a party to this action. Such party is absent from the county where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 31, 2022, at Kingwood, Texas.

Jerry Noon
Print Name of Signatory

Signature